UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| **CHRISTOPHER N. CRAMER,** )  )  **Plaintiff,** )  )  v. )  )  **COMMISSIONER OF SOCIAL** )  **SECURITY,** *sued as Frank Bisignano,*[1] )  *Commissioner of Social Security,* )  )  **Defendant.** ) | **CAUSE NO. 3:24-cv-00682-ALT** |

## OPINION AND ORDER

Plaintiff Christopher N. Cramer appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF 1). For the following reasons, the Commissioner's decision will be AFFIRMED.

### I. FACTUAL AND PROCEDURAL HISTORY

Cramer applied for DIB and SSI in February 2021, alleging disability as of January 15, 2020. (ECF 10 Administrative Record ("AR") 22, 253-60).[2] Cramer's claim was denied initially and upon reconsideration. (AR 22, 119-37, 141-55). On March 17, 2022, administrative law judge ("ALJ") Stephanie Katich conducted an administrative hearing (AR 44-84), and on June 8,

---

[1] Frank Bisignano became the Commissioner of Social Security in May 2025, and thus, pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted for his predecessor as the defendant in this suit. *See La'Toya R. v. Bisignano*, No. 1:24-cv-01564-JMS-TAB, 2025 WL 1413807, at *n.2 (S.D. Ind. May 15, 2025).

[2] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

2022, rendered an unfavorable decision to Cramer, concluding that he was not disabled because he could perform a significant number of unskilled, light-exertional jobs in the national economy despite the limitations caused by his impairments (AR 22-37). The Appeals Council denied Cramer's request for review (AR 8), and Cramer filed a complaint in this Court appealing the Commissioner's final decision. *See Cramer v. Comm'r of Soc. Sec.*, No. 3:22-cv-00980-MGG (N.D. Ind. filed Nov. 21, 2022).

In June 2023, pursuant to an agreed motion by the parties, the Court remanded that case to the Commissioner. (AR 1895-98). On remand, Cramer's initial application was consolidated with his subsequent application filed in November 2022. (AR 1904). On February 7, 2024, the ALJ conducted another administrative hearing (AR 1801-47), and on April 17, 2024, rendered another unfavorable decision to Cramer, again concluding that he was not disabled because he could perform a significant number of unskilled, light-exertional jobs in the national economy despite the limitations caused by his impairments (AR 1773-91). After Cramer failed to file timely exceptions with the Appeals Council (AR 1761), the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

On August 14, 2024, Cramer filed another complaint in this Court appealing the Commissioner's final decision. (ECF 1). Cramer advances just one argument in his opening brief—that the ALJ improperly assessed the severity and functional impact of Cramer's right wrist disorder. (ECF 17 at 5). On the date of the Commissioner's final decision, Cramer was thirty-two years old (AR 253, 1791); was a high school graduate (AR 1806); and had past relevant work as an equipment cleaner, hand polisher, and fast-food cook (AR 1789). At the hearing, Cramer testified that he was currently working twelve hours a week at a grocery store. (AR 1776, 1809). In his application, Cramer alleged that he is disabled due to the following

2

conditions: epilepsy, daily violent seizures, torn ligaments, right hand injury, torn right meniscus, allergies, tendinitis, and severe abdominal pain. (AR 273).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (collecting cases). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## III. ANALYSIS

### A. The Law

Under the Act, a claimant seeking DIB or SSI must establish that he is "unable to engage

3

in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also id.* §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether he has a severe impairment, (3) whether his impairment is one that the Commissioner considers conclusively disabling, (4) whether he is incapable of performing his past relevant work, and (5) whether he is incapable of performing any work in the national economy. *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. §§ 404.1520, 416.920.[3] "[A]n affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *See Clifford*, 227 F.3d at 868.

### B. The Commissioner's Final Decision

In the Commissioner's final decision, the ALJ found as a threshold matter that Cramer is insured for DIB through June 30, 2027. (AR 1776). At step one of the five-step sequential

---

[3] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks he can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. *Id.* §§ 404.1520(e), 416.920(e).

4

analysis, the ALJ determined that Cramer had worked after his alleged onset date of January 15, 2020, but that such work did not rise to the level of substantial gainful activity. (*Id.*). At the time of the hearing, Cramer was working twelve hours a week at a grocery store. (*Id.*).

At step two, the ALJ found that Cramer had the following severe impairments: "pseudoseizures/generalized idiopathic seizures/lactic acidosis, s/p Valgus Nerve Stimulator placement, right knee Bakers cyst/synovitis/possible small meniscus tear, left knee osteoarthritis, migraines, and conversion disorder." (*Id.* (citations omitted)). The ALJ, in turn, found that Cramer's sinus tachycardia with incomplete bundle branch block, left thumb trigger finger, bilateral shoulder pain/disorder, and status-post right wrist disorder were non-severe impairments. (*Id.*). At step three, the ALJ concluded that Cramer did not have an impairment or combination of impairments severe enough to meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 1777).

The ALJ assigned Cramer the following RFC:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can occasionally climb ramps and stairs; he can never climb ladders, ropes, or scaffolds; he can occasionally balance, stoop, kneel, crouch, and crawl; he should avoid all exposure to unprotected heights, unguarded moving machinery, open flames, large bodies of water, machinery with sharp blades or brakes, and operation of motorized vehicles. In addition, the claimant can respond appropriately to usual work situations, and he can deal with routine changes in a routine work setting free from fast paced production requirements such as assembly line type work activity, and work involving no more than occasional changes in terms of work setting, tools and processes.

(AR 1781).[2]

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567, 416.967.

The ALJ determined at step four that given the foregoing RFC, Cramer could not perform any of his past relevant work. (AR 1789). However, at step five the ALJ found that a hypothetical individual of Cramer's age, education, experience, and RFC could perform a significant number of unskilled, light-exertional jobs in the national economy, including collator operator, mail clerk, and routing clerk. (AR 1790). Accordingly, Cramer's applications for DIB and SSI were denied. (AR 1791).

### C. Right Wrist Disorder

Cramer's sole argument on appeal is that the ALJ's consideration of his right wrist disorder is not supported by substantial evidence, necessitating a remand of the ALJ's decision. (ECF 17 at 5).[3] Specifically, Cramer argues in his opening brief that the ALJ failed to properly consider: (1) the prior administrative medical findings; (2) whether Cramer met the criteria for a closed period of disability; (3) his diagnosis of tendonitis; (4) the February 2021 wrist x-ray findings; and (5) that he was prescribed a wrist brace. (*Id.* at 12-18). In his reply brief, however, Cramer concedes that his right wrist condition resolved at least by March 2022 as represented by his attorney at the administrative hearing, but asserts he is entitled to a closed period of disability for a period prior to March 2022. (ECF 24 at 5-6 ("The agency doctors reviewed twenty months of evidence and determined a hand limitation was warranted. Between August 2021 and March 2022, that impairment resolved. . . . Remand is required for the ALJ to properly assess how Plaintiff's functionality changed and if a closed period of different functionality is

---

[3] Cramer has waived any other argument by failing to advance it in his opening brief. *See, e.g.*, *Swanson v. Apfel*, No. IP 99-1159-C H/G, 2000 WL 1206587, at *4 (S.D. Ind. Aug. 7, 2000).

6

warranted.")).[4] Therefore, the Court will primarily focus on the evidence of record for the period preceding March 2022 and the ALJ's reasoning applicable thereto.

1. Applicable Law

"An ALJ need not address every piece of evidence or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted). Rather, an ALJ is "subject to only the most minimal of articulation requirements." *Id.* All that is required is that the ALJ "provide an explanation for how the evidence leads to their conclusions that is sufficient to allow . . . a reviewing court[] to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Id.* (citations and internal quotation marks omitted). In shorthand terms, an ALJ "needs to provide a logical bridge from the evidence to [her] conclusion." *Id.* (citation and internal quotation marks omitted).

Having said that, "[t]he ALJ must evaluate the record fairly. Thus, although the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (citations omitted); *see also John B. v. Saul*, No. 2:18-cv-00223-JVB-JEM, 2019 WL 4233744, at *2 (N.D. Ind. Sept. 5, 2019). "If the ALJ were to ignore an entire line of evidence, that would fall below the minimal level of articulation required." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citation omitted).

2. Relevant Medical Evidence

In November 2019, Cramer, who is left-handed, saw a family practitioner for right hand pain and weakness that had started two days earlier. (AR 516). He was working six days a week

---

[4] Cramer does not, however, identify the beginning and end dates of the purported closed period of disability with any further specificity.

and constantly using his hands for heavy lifting, pushing, and pulling. (AR 516). He was diagnosed with tendonitis, instructed to take meloxicam for fourteen days, and prescribed a right wrist brace "to use . . .when he is up[.]" (AR 519). He was advised to call the doctor if his symptoms did not improve within two weeks. (*Id.*).

Seven months later, in June 2020, Cramer visited his family physician for a sudden onset of wrist pain from a fall two months earlier. (AR 512). He reported that he had gone to Medstat at the time, who said it was a sprain. (*Id.*).[5] He obtained a wrist brace from CVS that he had been wearing since the fall and was taking ibuprofen or Tylenol occasionally. (*Id.*). His pain was aggravated by bending and lifting and relieved by wearing the brace; he had 5/10 pain and reduced range of motion. (*Id.*). The doctor noted skin breakdown "from excessive use of wrist brace[,]" instructed Cramer to leave the brace off, and referred him to an orthopedic specialist. (*Id.*).

Eight months later, in February 2021, an x-ray of Cramer's right wrist showed: "No acute fracture or dislocation. No periosteal reaction or osseous lesion. No significant focal degenerative changes. Soft tissue swelling/fullness noted along the dorsal aspect of the wrist." (AR 501). The interpreting physician's "impression" was "[n]o acute osseous abnormalities." (*Id.*).

In April 2021, Cramer presented at the emergency room following a seizure. (AR 604). The record indicates that his right wrist was "in [a] cast[.]" (*Id.*). Similar notations about Cramer wearing a right wrist brace were made at emergency room visits in June and July 2021. (*See* AR 1325 ("brace to [right] wrist"), 2290 ("right arm secured in wrist brace")).

In May 2021, Cramer was seen at Ortho NorthEast for a two-day history of right wrist

---

[5] No evidence of Cramer's treatment at Medstat is in the record.

pain and swelling due to an injury two days earlier. (AR 1583). He was lifting forty pounds at work and had been wearing a right wrist brace full time. (AR 1584). He said that he had seen an "outside orthopedic group months ago and was told he had potential ligament damage." (AR 1584).[6] An x-ray showed no widening of the scapholunate junction, though Cramer reported some pain in that region. (*Id.*). The orthopedic specialist "encouraged him to try and get out of [the brace] as tolerated." (*Id.*).

In June 2021, J.V. Corcoran, M.D., a state agency physician, reviewed Cramer's record from 2019 to April 2021, and opined that Cramer could perform "limited" handling and fingering with his right hand, indicating that he based those limitations on "right wrist in cast." (AR 86, 88-89). J. Sands, M.D., another state agency physician, reviewed Cramer's record in August 2021 and concluded the same. (AR 109, 111).

As stated earlier, at the administrative hearing in March 2022, Cramer's counsel represented that Cramer's "wrist pain is not current." (AR 50).

In May 2023, Cramer was seen by a nurse practitioner for an internal medicine examination in connection with his disability application. (AR 2129-30). He reported that he had right hand swelling every morning for the past six months, but the provider noted there was "no diagnosis from a health care provider." (AR 2130). Cramer reported 0/10 pain at rest and 8/10 pain with activity. (*Id.*). He could lift thirty pounds "without difficulty." (*Id.*). The provider noted a "1/4 size soft, swollen circle on his right wrist that was nontender." (*Id.*). Cramer demonstrated full range of motion in his right wrist and hand, normal sensation, and grip strength of 3/5 on the left and 4/5 on the right. (AR 2132).

In June 2023, Dr. Corcoran reviewed Cramer's record from August 2022 through May

---

[6] No evidence of such visit is in the record.

2023 in connection with Cramer's second application and assigned him no manipulative limitations. (AR 1881, 1883-84).[7]

3. <u>Analysis</u>

Cramer concedes in his reply brief that his right wrist issue was resolved at least by March 2022, but argues that he is still entitled to a closed period of disability for a period prior to March 2022. (ECF 24 at 6). In particular, Cramer takes issue with: (1) the ALJ's step-two finding that his status-post right wrist disorder was non-severe given the medical evidence of record from 2019 through March 2022, and (2) the ALJ's failure to include any right-hand manipulative limitations in the RFC. (ECF 17 at 12-18). For the following reasons, the ALJ's failure to find a closed period of disability prior to March 2022 is supported by substantial evidence.

At step two, the ALJ supported her conclusion that Cramer's right wrist disorder was non-severe by citing physical examinations and x-ray findings that the ALJ characterized as "unremarkable[.]" (AR 1776 (citations omitted)). The ALJ also discussed the nurse practitioner's May 2023 examination that showed reduced grip strength bilaterally, a swollen area in the right wrist, but normal range of motion and dexterity bilaterally. (AR 1776 (citing AR 2132)). The ALJ logically reasoned that given grip strength was reduced bilaterally, this finding was not related to Cramer's old right wrist impairment. (*Id.*).

The ALJ elaborated on her reasoning later in the decision when discussing the RFC and medical opinions, explaining why she found Dr. Corcoran's and Dr. Sands's 2021 opinions assigning right hand manipulative limitations just "partially persuasive." (AR 1787); *see Dallas H. v. O'Malley*, No. 22 C 50432, 2024 WL 1158378, at *3 n.4 (N.D. Ill. Mar. 18, 2024) ("A

---

[7] For some reason, the ALJ did not mention this June 2023 review by Dr. Corcoran. Cramer, however, does not advance an argument on this basis, perhaps because the RFC assigned by the ALJ was consistent with Dr. Corcoran's June 2023 opinion.

reviewing court must read an ALJ's opinion as a while and take a common-sense approach to its review." (citation omitted)). The ALJ explained:

> Following the August 2021 review of the overall evidence, the State Agency physicians determined that the claimant retained the functional capacity to sustain light exertion work with occasional postural maneuvers, never climbing ladders, ropes or scaffolds, limited right hand fingering/handling and need to avoid concentrated exposure to workplace hazards such as machinery and working at heights (1A; 7A). This opinion is partially persuasive.
>
> The State Agency physicians noted that the claimant presented with a right wrist cast, which is not readily reflected within the April 2021 exams. While the claimant for a time wore a removable right wrist brace pretty much fulltime (i.e. clinical exams do not reflect clinical observations for sustained brace use), his treating orthopedic provider encouraged him to get out of the cast, and there was no clinically indicated need for use of a right wrist cast nor any similarly sustained severe right upper extremity deficits (7A/5; 3F/10-12; 4F/12-14; 5F/31, 47, 65, 70, 75-76, 81, 91, 94; 12F/2, 7-8). As discussed earlier under Step Two and above, clinical exam findings do not support sustained right upper extremity complaints nor sustained right upper extremity clinical deficits nor a sustained clinical need for right upper extremity treatment or referrals; therefore, the overall evidence is not reasonably consistent with nor supportive of a severe right upper extremity condition.

(AR 1787-88).

The ALJ's reasoning in this respect is supported by substantial evidence. As the ALJ noted, Cramer wore a removable brace on his right wrist, and there is no evidence of record he ever wore a cast on his right wrist. As such, the ALJ's logic in discounting the manipulative limitations assigned by Dr. Corcoran and Dr. Sands in 2021 based on "right wrist in cast" is reasonable. (*See* AR 88, 109). The ALJ further considered that Cramer's treating orthopedist in May 2021 encouraged him to get out of the brace as much as tolerated. (AR 1584). Thus, the ALJ did not improperly consider the prior administrative medical findings in this case, and her logic in discounting these prior administrative medical findings is easily traced. *See Rei Ayanami-Quinn v. Frank Bisignano*, No. 3:24-CV-607-JEM, 2025 WL 1936638, at *2 (N.D. Ind. July 11, 2025) ("[T]he ALJ must explain how persuasive she finds all of the medical opinions

11

and all of the prior administrative medical findings in a claimant's case record." (citation, quotation marks, and brackets in original omitted)).

Cramer also argues that "the ALJ faults the Plaintiff for lacking a diagnosis surrounding their wrist disorder." (ECF 17 at 14 (footnoted omitted); *see* AR 1776-77)). Not so. The ALJ merely summarized what the examining nurse practitioner wrote in May 2023: "The consultative physical examiner noted reduced grip strength bilaterally (19F/5). However, she did not provide an underlying diagnosis (19F/5)." (AR 1776; *see* AR 2130 ("Right hand, no diagnosis from a health care provider.")). And while the ALJ did not expressly mention the November 2019 diagnosis of tendonitis, she did cite the medical record that reflected the diagnosis, indicating that the ALJ was aware of the diagnosis and related treatment. (AR 1785 (citing AR 519)). In any event, "[e]stablishing the existence of an impairment is not enough. The claimant must present evidence of limitations affecting their capacity to work." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025) (citation omitted).

Similarly, Cramer faults the ALJ for failing to mention that his right wrist brace was prescribed to him in November 2019. (ECF 17 at 17). Rather, the ALJ stated that "clinical exams do not reflect clinical observations for sustained brace use." (AR 1787). Cramer asserts that "it is hard to imagine any stronger 'clinical' indication for the use of a wrist brace than a doctor specifically stating to use one." (EDF 17 at 17). To reiterate, the ALJ cited the November 2019 medical record in which the doctor diagnosed Cramer with tendonitis and prescribed a right wrist brace, indicating that the ALJ was aware of the prescription. (AR 1785 (citing AR 519)). Further, Cramer ignores the fact that the doctor instructed him at the November 2019 appointment to call if his symptoms did not improve in two weeks, and there is no evidence that Cramer ever followed up with the doctor. (AR 519). Cramer also fails to confront that the next evidence of

record pertaining to his right wrist is a note seven months later where he told his family doctor he sprained his right wrist in a fall just *two months earlier* and "went to CVS to get [a] brace and has been wearing it since his fall." (AR 512). As such, Cramer's argument that the ALJ erred by failing to consider his right wrist brace was "prescribed" in November 2019 turns a blind eye to other intervening relevant evidence of record.

Cramer also contends the ALJ mischaracterized his February 2021 wrist x-ray findings as "unremarkable" (AR 1776), when it actually showed "[s]oft tissue swelling/fullness noted along the dorsal aspect of the wrist" (ECF 17 at 16 (footnoted omitted); *see* AR 501). Cramer argues that the ALJ improperly played doctor by summarizing the x-ray findings in this selective manner. (ECF 17 at 16); *see Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) ("This mistaken reading of the evidence illustrates why ALJs are required to rely on expert opinions instead of determining the significant of particular medical findings themselves." (citations omitted)); *Dixon*, 270 F.3d at 1177 ("The cases in which we have reversed because an ALJ impermissibly 'played doctor' are ones in which the ALJ failed to address relevant evidence." (collecting cases)).

But neither state agency physician who reviewed the x-ray results even mentioned the swelling, instead focusing on the interpreting physician's "impression" of "no acute osseous abnormalities." (AR 93, 110); *see Baptist v. Kijakazi,* 74 F.4th 437, 443 (7th Cir. 2023) ("When evidence of mild changes is reviewed by a claimant's treatment physicians and unaccompanied by any new symptoms, limitations, or treatment recommendations, we cannot say that it changed the picture so much that the ALJ was required to seek an updated opinion to account for it." (citations omitted)). As such, the ALJ's paraphrasing of the x-ray findings as "unremarkable" does not rise to reversible error. *See Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) (The

claimant's argument "amounts to nothing more than a dislike of the ALJ's phraseology."); *see also Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021) ("[W]e will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result." (citations omitted)).

Additionally, the ALJ adequately considered the medical evidence of record relating to Cramer's right wrist condition in connection with Cramer's proposed closed period of disability.[8] As the ALJ observed, the records prior to March 2022 reflect extremely limited conservative care and often unremarkable physical exams. (*See* AR 1777, 1785, 1788). The ALJ's recitation of this evidence makes it clear that she did not believe Cramer was disabled during this time. *See Combs*, 69 F.4th at 436 (rejecting the claimant's argument that "it was incumbent upon the ALJ to address explicitly whether [the claimant] endured a closed period of disability"); *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (rejecting the claimant's argument that the ALJ failed to consider whether she was "temporarily disabled" by a heart condition from February 24, 2012, to May 21, 2013, where the ALJ "meticulously discussed the evidence regarding [the claimant's] heart problems . . . from February 2012 up through the date of the ALJ's decision"). Consequently, Cramer's assertion that he is entitled to a closed period of disability prior to March 2022 due to his right wrist impairment is unpersuasive.

In sum, the law simply requires "that the ALJ sufficiently articulate [her] assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning." *Carlson*, 999 F.2d at 181 (second alteration in original) (citation, internal quotation marks, and brackets omitted). Here, the ALJ has met that

---

[8] To reiterate, Cramer does not even bother to specify the actual beginning and end dates of his proposed closed period of disability. *See Combs v. Kijakazi*, 69 F.4th 428, 437 (7th Cir. 2023) ("We cannot fault the ALJ for failing to consider a closed period that [the claimant] herself has had difficulty identifying.").

responsibility and supported her decision with substantial evidence. Therefore, a remand is not warranted, and the Commissioner's final decision will be affirmed. *See generally Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires a court to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." (collecting cases)).

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Cramer.

SO ORDERED.

Entered this 8th day of August 2025.

/s/ Andrew L. Teel
Andrew L. Teel
United States Magistrate Judge